**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| CHAMBERS OF<br>**Stacey D. Adams**<br>UNITED STATES MAGISTRATE JUDGE | FRANK R. LAUTENBERG U.S. POST<br>OFFICE & COURTHOUSE BUILDING<br>2 FEDERAL SQUARE<br>NEWARK, NJ 07102<br>973-645-6121 |
|---|---|

August 12, 2025

**LETTER ORDER**

Re:   U.S.A. v. Thomas Kane Miller
      Docket No. 25-cr-398 (RK)

Dear Counsel:

    **THIS MATTER** having come before the Court via motion filed by the Government on June 27, 2025 seeking entry of a discovery protective order. (ECF No. 25). Defendant Thomas Kane Miller ("Defendant") filed an opposition on July 7, 2025. (ECF No. 27). For the reasons set forth herein, the Government's motion is **GRANTED**.

**Background**

    Defendant was charged by Indictment on June 16, 2025 with one count of Possession with Intent to Distribute Fentanyl, 4-ANPP, and Heroin and three counts of Distribution and Possession with Intent to Distribute Fentanyl and Heroin, all in violation 21 U.S.C. § 841(a)(1) and (b)(1)(C). (ECF No. 23). The Government alleges that the fentanyl and heroin Defendant distributed resulted in death to a Victim. (ECF No. 25).

    On June 27, 2025, the Government filed a Motion for a Discovery Protective Order. (ECF No. 25). The Government explained it is planning to produce additional, post-indictment discovery that includes: the Victim's autopsy report and photographs; crime scene evidence including photographs and video; and information from the Victim's phone that contains private information about the Victim and third parties, including information concerning addiction recovery programs. (*Id.* at 1). The Government seeks to protect this information from disclosure on four grounds: (1) to protect the privacy of the Victim and the Victim's family; (2) to protect the privacy of third parties who communicated with the Victim on her phone about potentially sensitive information, such as addiction treatment; (3) to protect sensitive law enforcement information, including information about undercover agents and operations; and (4) to protect law enforcement's ongoing investigation related to this case. (*Id.* at 1-2). Importantly, the Government is not seeking to withhold this information from Defendant or his counsel, or restrict its use at trial. (*Id.* at 2). Rather, the Government seeks only to limit the disclosure of these materials to third parties and the public. (*Id.*).

    Defendant does not challenge that the Government lacks good cause for the Protective Order, nor does he argue that he will be prejudiced by its entry. Rather, Defendant objects on two

grounds. (ECF No. 27). First, Defendant believes he is already in possession of some of the documents that will be produced by the Government and that such documents should therefore not be subject to the Protective Order. (*Id.*). Second, Defendant argues that the proposed Protective Order is overly broad because it is an "umbrella" protective order that would cover all remaining discovery produced in this case. (*Id.*). If the Court is going to allow a Protective Order, Defendant asks that it be limited to those categories of information the Government has specifically identified as the basis for the motion. (*Id.* at 2).

## Legal Standard

Federal Rule of Criminal Procedure 16 entitles a defendant to relevant discovery in a criminal matter. Pursuant to Fed. R. Crim. P. 16(d)(1) "the court may, for good cause, deny, restrict, or defer discovery or inspect, or grant other appropriate relief." This includes the authority to grant a Protective Order protecting materials produced during discovery from disclosure to third parties or the public. *See* Fed. R. Crim. P. 49.1; *see also Alderman v. United States*, 394 U.S. 165, 185 (1969) ("[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.") (citing Fed. R. Crim. P. 16(e)). To establish good cause the Government must establish that "disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal citations and quotation marks omitted)). "The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause." *Id.* (citing *Pansy*, 23 F.3d at 787-91).

In determining whether there is good cause for the entry of a Protective Order, courts consider the following factors, referred to as the *Pansy* factors:

> (1) the interest in privacy of the party seeking protection;
> (2) whether the information is being sought for a legitimate purpose or an improper purpose;
> (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious;
> (4) whether the information sought is important to public health and safety;
> (5) whether sharing of the information among litigants would promote fairness and efficiency;
> (6) whether the party benefitting from the order of confidentiality is a public entity or official; and
> (7) whether the case involves issue important to the public.

*United States v. Gallo,* No. 24-cr-712 (BRM), 2025 WL 384276, at *1-2 (D.N.J. Feb. 4, 2025) (citing *Arnold v. Pa. Dep't of Transp.*, 477 F.3d 105, 108 (3d Cir. 2007) (citing to *Pansy*, 23 F.3d at 783 and describing factors commonly known as the "*Pansy* factors")).

## Analysis

Here, the Court finds good cause exists for the entry of a Protective Order. The Government advanced four separate and legitimate bases for a Protective Order: (i) the privacy interests of the Victim and her family; (ii) the privacy interests of third parties implicated in the phone records; (iii) the need to protect sensitive law enforcement information including the identity of undercover law enforcement officers and operations; and (iv) the need to protect against the disclosure of information about an ongoing investigation. Applying the *Pansy* factors, the Court finds the following:

(1) Protecting Privacy Interests: Both the Victim, and her family, have a legitimate interest in protecting the privacy of sensitive medical information and photographs. Indeed, the Crime Victims' Rights Act ("CVRA") affords crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). As the Victim here is deceased, this privacy right is transferrable to the Victim's family. 18 U.S.C. § 3771(e)(2)(B). Courts have regularly relied on the CVRA to find good cause to enter a protective order. *United States v. Torres*, No. 20-cr-418 (BRM), 2020 WL 4500046, at *4 (D.N.J. Aug. 5, 2020) (collecting cases). In addition to the rights of the Victim and her family, the third parties who communicated with the Victim on her phone also have a privacy interest in so far as the communications relate to their participation in an addiction recovery program, contain personal identifying information ("PII") or private medical information. *See, e.g., Gallo*, 2025 WL 384276, at *2-3 (entering a Protective Order to protect the disclosure of third parties' personal identifiable information); *United States v. Farese*, No. 12-cr-877 (KM), 2022 WL 788880, at *6 (D.N.J. Mar. 15, 2022) (entering Protective Order designed, in part, to protect the PII and confidential health information of third parties). This factor strongly weighs in favor of the entry of a Protective Order.

(2) Legitimate Purpose: It is undisputed that the information being sought by Defendant is for a legitimate purpose, namely, his defense. The Government is not seeking to prevent Defendant from viewing it. Rather, the Government is only seeking to prevent dissemination to third parties or the public.

(3) Embarrassment: It is unknown precisely what is in the photographs or video of the autopsy or crime scene. However, the Victim overdosed on drugs so there is a legitimate concern that disclosure of photographs of the Victim or crime scene could cause embarrassment to the Victim's surviving family. Similarly, the Government advises that the communications between the

       Victim and third parties may concern treatment for addiction recovery. This treatment may not be known to the third parties' employers, family, friends or community and, if disclosed, could cause embarrassment.

  (4) <u>The Public Interest</u>: There does not appear to be a significant public interest in having access to the designated information. To the contrary, the public interest leans in favor of protecting against public disclosure of private health information and protecting the dignity of crime victims, as reflected in the CVRA. Further, the Government proffers that some of the information is part of an ongoing investigation, presumably into drug distribution. Keeping this information confidential is beneficial to public health and safety because it could prevent future distribution of drugs that are a danger to the community.

  (5) <u>Sharing of Information Among Litigants</u>: This factor is not raised by either party and is not relevant to the current analysis as there are no co-defendants. Further, the Government is not seeking to withhold any information from Defendant.

  (6) <u>Whether Party Benefitting is a Public Entity or Official</u>: This factor is not applicable.

  (7) <u>Whether Case Involves Issues Important to the Public</u>: The combatting of drugs is always an important public safety issue. However, there is nothing in the record to suggest that protecting the disclosure of the designated discovery will impede this public interest.

      Weighing each of the above factors, the Government has established good cause for the entry of a Protective Order. Defendant will not be prejudiced by the Protective Order. The Government is not seeking to withhold any information from the Defendant. It is not seeking to designate the documents "attorney's eyes only." (ECF No. 25, at 4). It only seeks to protect against disclosure to third parties or the public generally.

      In his Opposition, Defendant appears to concede the propriety of a Protective Order in this matter. He does not argue that the Government lacks good cause, nor does he argue that he will be prejudiced by such an Order. Rather, Defendant seeks to limit it in two respects.

      First, Defendant claims that some of the information the Government seeks to protect was either previously produced without any Protective Order or was obtained by the Defendant through other means. Defendant is correct that information already in the public domain or obtained outside of the discovery process is not subject to protection. *See Seattle Times v. Rhinehart*, 467 U.S. 20, 34 (1984) (holding that "a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the

identical information covered by the protective order as long as the information is gained through means independent of the court's processes.") However, at this point, the only document Defendant has specifically identified as already in his possession is the autopsy report, which he received from the Government during pre-indictment discovery. As it was part of the discovery process, this document is not beyond the reach of a Protective Order and may be retroactively designated by the Government.[1] Defendant has not identified any other information he obtained outside of the discovery process. Thus, this objection is premature and lacking in particularity.

Second, Defendant objects to the Protective Order on the grounds that it is overbroad. He cites to two cases, *Pansy*, 23 F.3d at 786-87, and *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984), for the proposition that the documents sought to be protected must be "clearly defined" and that the designating party has the "burden of justifying each and every document sought to be covered. . . ." (ECF No. 27 at 1-2). Both *Pansy* and *Publicker* addressed Protective Orders in the context of civil cases. However, "umbrella" protective orders such as that proposed in the instant matter have been endorsed by the Third Circuit for use in criminal cases to manage the production of voluminous information and encourage prompt disclosure of information without delay. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108 (3d Cir. 1986); *Wecht*, 484 F.3d at 211; *Farese*, 2022 WL 788880, at *3. "An umbrella protective order acknowledges that certain specific categories of information qualify in the first instance, as presumptively confidential and thus good cause exists under the standards enunciated in *Pansy* and reiterated in *Wecht* to include them in the proposed protective order." *Id.* at *3.

This does not leave Defendant without a remedy, nor does it impermissibly shift the burden from the Government to Defendant. As the Third Circuit explained:

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head. That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the

---

[1] Any disclosure that occurred before the entry of the Protective Order, however, would not constitute a violation of the Protective Order.

5

> movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

*Cipollone*, 785 F.2d at 1122; *see also Gallo*, 2025 WL 384276, at *3 (approving an umbrella order that covered disclosure materials containing PII). In *Farese*, the Court suggested a process for the de-designation of documents or information subject to an umbrella protective order:

> [I]t is not only appropriate, but prudent, to include a provision that incorporates the procedures in the event the party receiving Designated Confidential Materials under the protective order objects to a specific document's confidential designation. The procedures must set forth the timeframe by when the receiving party (here Defendants) must serve any such objections, a deadline for the designating party (here the Government) to respond, the consequence if no timely written response is received, and if received, the timeframe for conferring in good faith to resolve the dispute.

*Farese*, 2022 WL 788880, at *4.

The Court agrees that the process set forth in *Farese* is an appropriate method to address Defendant's concerns about overbreadth. Accordingly, the parties are directed to meet and confer within 7 days of this Order on appropriate language to include in the in the Protective Order to govern the process should Defendant object to the designation of any document as confidential. The process should set forth a specific time frame for Defendant to assert an objection following production, for the Government to respond and for the parties to meet and confer to see if they can reach a resolution. Should the parties be unable to reach agreement, the parties shall jointly submit a letter to the undersigned (also within the specified time frame) succinctly setting forth their respective positions in support of and in opposition to the confidential designation. Should the Court be called upon to determine whether a document is properly designated as confidential, the burden of proof remains with the Government to justify the Protective Order with regard to the document. *See id.*; *see also Cipollone*, 785 F.2d at 1122.

For these reasons, the Government's motion for the entry of a Protective Order is **GRANTED.** The parties shall meet and confer within 7 days to agree upon a proposed form of order consistent with the above instructions, and file it with the Court within 10 days of this Order. The clerk is directed to terminate the motion at ECF No. 25.

*s/ Stacey D. Adams*
Stacey D. Adams
United States Magistrate Judge
